# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TAMARA BAINES, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| CITY OF ATLANTA, GEORGIA; | ) | |
| And ROBIN SHAHAR in her Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Tamara Baines ("Plaintiff" or "Ms. Baines") files this Complaint for Equitable Relief and Damages against The City of Atlanta, Georgia (the "City") and Robin Shahar, in her individual capacity, (Ms. Shahar"), (collectively Defendants) showing the Court as follows:

## INTRODUCTION

1.     At all times relevant to this dispute, Defendant Robin Shahar was a supervisor in the City of Atlanta Law Department and worked with Ms. Baines. Ms. Shahar, who at the time was Chief Counsel, used her position and the authority of her position to engage in a pattern and practice of subjecting her female co-workers and subordinates, including Ms. Baines, to a hostile work environment and

1

retaliating against them when they rejected her sexual advances.   Ms. Shahar subjected Ms. Baines to repeated unwanted sexual advances, comments, and touchings of which Ms. Baines' supervisors, City Attorney Cathy Hampton and Deputy City Attorney Karen Thomas were aware.   Ms. Baines rejected these advances.   Ms. Baines not only rejected the advances, she opposed Ms. Shahar's comments and conduct by reporting her to her supervisors, Human Resources personnel and, ultimately, the Equal Employment Opportunity Commission.   After Ms. Baines' complained, Ms. Shahar and the City continued to discriminate against Ms. Baines based on her gender, her disabilities, and because of her rejection of Ms. Shahar's advances, including continued harassment; forcing Ms. Baines to work while on Family and Medical Leave, 28 U.S.C. § 2601 *et seq.* ("FMLA"); refusing to reinstate Ms. Baines when she was released to return to work at the end of her FMLA leave; subjecting Ms. Baines' to prohibited medical inquiries and a prohibited medical examination in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.*; refusing to accommodate Ms. Baines' disabilities in violation of the ADA; and ultimately, terminating her employment when Defendants learned that she determined  to be fit for duty.

2.     Ms. Baines brings claims of sexual harassment (both hostile work

2

environment and tangible employment action) against both the City and Defendant Shahar for their deprivation of her rights under color of state law, regulations, custom or usage in violation of 42 U.S.C. § 1983, the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1981, and the violation of Plaintiff's rights as protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Ms. Baines also brings this action under the ADA to correct unlawful employment practices based on disability, to vindicate Ms. Baines' rights, and to make her whole.  Ms. Baines also brings this action under the FMLA because of the City's interference with her rights under the FMLA and retaliation against her for exercising those rights.  Ms. Baines seeks declaratory and injunctive relief, back pay and lost benefits, front pay, compensatory and punitive damages, liquidated damages, and attorney's fees and costs of litigation.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.      Venue is proper in this district and division under 28 U.S.C. § 1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

5.      Defendant City of Atlanta's actions at issue in this matter were taken

3

under color of state and local law.

6.     Defendants' discriminatory and retaliatory conduct described herein was accomplished pursuant to unofficial policy and custom of the City of Atlanta or was committed or authorized by officials whose acts can be fairly deemed to be the actions and official policy and customs of City of Atlanta.

7.     Defendant Shahar's conduct violated clearly established statutory or constitutional rights of which any reasonable person would have known.

8.      The acts at issue were taken with intent to discriminate by policymakers, including but not limited to Defendant Shahar and then City Attorney Cathy Hampton, in accordance with customs, policies and practices promulgated by Hampton, Shahar and/or the governing body of City of Atlanta.

## Exhaustion of Administrative Remedies

9.     On March 7, 2017, Ms. Baines filed a charge of discrimination – Charge No. 410-2017-02797 – with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains.

10.     On November 3, 2017, following the City of Atlanta's ("City") termination of Ms. Baines' employment, Ms. Baines amended her EEOC Charge.

11.     Ms. Baines received a Notice of Right to Sue – Issued on Request – dated May 7, 2018.

4

12.    Within the statute of limitations for filing this matter, the Parties entered into a tolling agreement under which the statutes of limitations were tolled through and including January 15, 2019.

13.    Ms. Baines brings this suit within the timeframe of the tolling agreement.

## The Parties

14.    Ms. Baines is a citizen of the United States and a Resident of the State of Georgia.  Ms. Baines submits herself to the jurisdiction of this Court.

15.    Ms. Baines is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

16.    Ms. Baines was employed by the City for more than 12 months and worked more than 1250 hours in the 12 months preceding her serious health condition.

17.    Ms. Baines is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

18.    Ms. Baines is a person with a disability because she has actual mental impairments – Bipolar Disorder, major depression, and anxiety – causing substantial limitations in one or more major life activities, because she has a record of impairment, and because the City regarded her as having an impairment.

19.    At all times, Ms. Baines was capable of performing the essential functions of her job with or without an accommodation.

20.    Ms. Baines is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

21.    The City of Atlanta is a municipality sited in Atlanta, Georgia, organized under the laws of the State of Georgia and has employed more than fifteen (15) persons for each working day in each of the 20 calendar weeks in the current or preceding calendar year.

22.    The City is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby and was the public employer of Ms. Baines.

23.    The City is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

24.    The City had more than 50 employees within a 75-mile radius of the location in which Ms. Baines was employed in each of 20 or more consecutive calendar weeks in the current or preceding year within the meaning of 29 U.S.C. § 2601 *et seq.*

25.    The City of Atlanta is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and has employed

more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

26.     City of Atlanta is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

27.     City of Atlanta is subject to the jurisdiction of this Court and may be served with process pursuant to Rule 4 of the Federal Rules of Civil Procedures by service on its Mayor at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

28.     Defendant Shahar was, at all times relevant to this Complaint, a supervisory level employee with the City of Atlanta and is subject to the jurisdiction of this Court.  She is a citizen and a resident of the State of Georgia.  She may be served with process via personal service at her place of business at the Office of the Mayor of the City of Atlanta, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

29.     Defendants engaged in all the conduct described herein under color of state and local law.

30.     Defendants' actions described herein were accomplished pursuant to the unofficial policy and custom of City of Atlanta and were committed or authorized by officials whose acts can be fairly deemed to be the actions of City of Atlanta.

Specifically, the City of Atlanta has a policy or custom of permitting sexual harassment of its employees and disciplining and terminating employees who object to working in a hostile work environment. This policy and custom was committed or authorized by officials whose acts can fairly be deemed to be the actions of City of Atlanta with deliberate intent

## FACTUAL ALLEGATIONS

31.    Ms. Baines began employment with the City of Atlanta in 2004 and was employed through her termination in July 2017.

32.    Ms. Baines' position with the City of Atlanta at the time of her termination was Senior Assistant City Attorney.

33.    In 2007, Ms. Baines took medical leave for treatment of her serious health conditions/ADA-covered disabilities and the City was aware of these disabilities.

34.    In February 2016, City of Atlanta Senior Assistant City Attorney Robin Shahar began again insisting that Ms. Baines meet with her alone.

35.    Ms. Shahar began making sexual advances to Ms. Baines.

36.    Ms. Shahar would grope Ms. Baines' leg and when Ms. Baines would mover her hand, Ms. Shahar would put it back on her leg.

37.    When Ms. Baines tried to sit on the other side of the table, Ms. Shahar

8

insisted that she sit at the round table in her office, in the seat closest to her.

38.     When Ms. Baines' refused, Ms. Shahar would threaten to tell then City Attorney Cathy Hampton.

39.     Due to Ms. Baines' growing discomfort with being alone with Ms. Shahar, Ms. Baines requested that Veronica Hoffler enter the case she was working on with Ms. Shahar.

40.     Ms. Shahar became noticeably angry about the fact that Ms. Hoffler was around and ultimately had Ms. Hampton remove her from the case.

41.     After one particularly contentious meeting, Ms. Baines emailed her supervisor, Deputy City Attorney Karen Thomas, and told her that she did not want to be alone with Ms. Shahar.

42.     Ms. Thomas told Ms. Baines that she could not be forced to meet with Ms. Shahar alone.

43.     Ms. Thomas also initially complied with Ms. Baines' request that she not be alone with Ms. Shahar.

44.     Ms. Baines also shared her discomfort with Ms. Shahar with Ms. Hampton.

45.     Because Ms. Baines did not believe the issue of whether she had to be alone with Ms. Shahar was sufficiently addressed; she spoke with Ms. Thomas the

next day and made it clear that Ms. Shahar had been sexually inappropriate with her.

46.    Ms. Thomas said she would talk to Ms. Hampton, and Ms. Hampton later told Ms. Baines that there would be no more one-on-one meetings.

47.    However, Ms. Hampton did not request that the matter be formally investigated.

48.    Ms. Hampton's "directive" lasted for a few days.

49.    Ms. Shahar continued to meet with Ms. Baines.

50.    Ms. Shahar escalated from having her hand on Ms. Baines' leg to having it further up on her thigh.

51.    When Ms. Baines got up to leave, she would threaten her but after a while, Ms. Baines ignored her threats.

52.    Ms. Shahar would then follow Ms. Baines into her office.

53.    Ms. Baines had to leave her office just to get away from her.

54.    Ms. Baines reported this to Ms. Thomas, but she said that Ms. Hampton knew, and that Ms. Baines had to meet with Ms. Shahar.

55.    Ms. Baines then attempted to meet with Ms. Hampton, but she was never available.

56.    Maiysha Rashida Rashad and Deputy City Attorney Keisha Burnette also harassed and stalked Ms. Baines beginning in 2016.

57.     Ms. Rashad's harassment of Ms. Baines included Ms. Rashad inappropriately touching Ms. Baines and stalking Ms. Baines physically and through her social media accounts, both in the office and outside of the office.

58.     Ms. Shahar shared with Ms. Baines that Ms. Rashad Ms. Burnette had hacked into her private social media accounts.

59.     After unsuccessfully trying to resolve these issues internally, Ms. Baines contacted Tracy Reed, the Mayor's brother.

60.     Ms. Baines had known Mr. Reed for a while and texted him about an "LGBT issue."

61.     When Mr. Reed called her back, he said we would meet to discuss the issue, but he never followed up to schedule a meeting.

62.     Around the same time, Ms. Shahar was brought in to counter any LGBT argument Ms. Baines would make regarding the harassment she was also receiving by Maiysha Rashad and Deputy City Attorney Keisha Burnette, although the LGBT issue involved Ms. Shahar, as well.

63.     At this time, the harassment by Ms. Shahar, Ms. Rashad, and Ms. Burnette escalated.

64.     Ms. Baines shared this information with Ms. Thomas, but Ms. Thomas said there was nothing she could do.

11

65.     Ms. Baines also attempted to meet with Ms. Hampton, but she was never available.

66.     Ms. Baines' doctor also called Ms. Hampton twice to discuss the harassment issues, but Ms. Hampton would not return her calls.

67.     In June or July 2016, Ms. Baines was forced by Ms. Thomas to work on another case with Ms. Shahar because Ms. Shahar had requested it.

68.     Ms. Baines requested that the case be bifurcated so that she did not have to work with Ms. Shahar but the request was denied.

69.     Ms. Shahar began insisting that Ms. Baines meet with her alone to discuss the case.

70.     Ms. Baines objected to Ms. Thomas, but Ms. Thomas told her that she had to meet with Ms. Shahar since she did not know what she was doing.

71.     Ms. Baines suggested that they bifurcate the case so that she would not have to work with Ms. Shahar, but Ms. Thomas refused.

72.     Ms. Thomas said she expected Ms. Baines to help Ms. Shahar in the same way she would help Ms. Thomas.

73.     Ms. Baines replied that there was a major difference; Ms. Thomas was not trying to touch her.

74.     Ms. Thomas still insisted that Ms. Baines work with Ms. Shahar.

75.     Accordingly, Ms. Baines met with Ms. Shahar almost daily, during which time she continued with her sexual advances.

76.     Even after a notice of appeal was filed and pending, Ms. Shahar continued to attempt to meet with Ms. Baines.

77.     Ms. Baines told her that there was no reason to meet.  Ms. Shahar then asked Ms. Baines to meet about another issue and Ms. Baines told her that she did not have time.

78.     While at work on December 6, 2016, Ms. Baines received an email from Human Resources to report for a meeting.

79.     On her way to this meeting, Ms. Shahar called Ms. Baines into her office and made additional unwanted sexual advances toward Ms. Baines.

80.     When Ms. Baines refused Ms. Shahar's advances and became upset, Ms. Shahar became alarmed and offered to drive her to her therapist's office.

81.     Ms. Shahar told Ms. Baines that she knew why she was called down to HR and offered to make it all go away.

82.     She also said that Ms. Rashad and Ms. Burnette had been in Ms. Baines' social media.

83.     Ms. Baines became annoyed and asked what she would have to do for everything to go away.

84.    Ms. Shahar paused, and Ms. Baines asked the question again.  Ms. Shahar then looked at M. Baines and said, "you know."

85.    Ms. Baines became upset and told Ms. Shahar her that they were "fucking killing me."

86.    Ms. Baines insisted on going to HR.

87.    Ms. Shahar tried to stop her from going to HR and then insisted on going with her.

88.    Once in HR, Ms. Baines was supposed to meet with two women, both older women – one African American and one Caucasian.

89.    However, Ms. Shahar stood in the doorway to prevent the African American woman from closing the door.

90.    She kept saying to call Ms. Hampton since Ms. Hampton knew what was going on.

91.    The African American woman, visibly annoyed, said that Ms. Hampton was the entire reason they were having the meeting.

92.    Eventually, Ms. Shahar tried unsuccessfully to stop Ms. Baines from speaking to the two women, and she met with them briefly before completely breaking down.

93.    Ms. Baines was never an imminent threat to herself or anyone at her

14

office.

94.    The City's psychologist, Dr. Adrienne Bradford, walked Ms. Baines from the building, passed the police officers stationed at the front of the building, and had an Employee Assistance Program staff member drive Ms. Baines to Ms. Baines' psychologist's office in DeKalb County.

95.    When Ms. Baines met with her doctor, the City's EAP employee departed and did not return to collect Ms. Baines.

96.    After their session, Ms. Baines' doctor determined that Ms. Baines did not need in-patient care and a co-worker, Ms.  Hoffler, came and drove her to her car.

97.    Ms. Baines' doctor did, however, believe that Ms. Baines needed follow up care and treatment.

98.    She placed Ms. Baines on sick leave for two weeks, during which time the City continued to contact her about work.

99.    Ms. Baines's doctor then placed Ms. Baines on leave under the FMLA to attempt to deter the City from continuing to require her to work while on leave.

100.    Ms. Baines followed her doctor's treatment plan during the entire duration of her leave, including meeting with her every week.

101.    Ms. Rashad  and  Ms. Burnette  continued  to  harass  Ms. Baines

throughout her medical leave.

102.   As just a small part of what they did to Ms. Baines, they hacked her social media and followed her around.

103.   During her leave, Ms. Baines' case load was transferred to Ms. Hoffler, who was not equipped to handle Ms. Baines' extensive and complex workload.

104.   When Ms. Hoffler reminded her supervisor, Deputy City Attorney Kimberly Patrick, that she was not prepared to handle this work load, Ms. Patrick told her to contact Ms. Baines about any questions she had about the cases.

105.   Ms. Patrick also insisted that Ms. Hoffler provide Ms. Baines with an attorney's contact information so Ms. Baines could follow up with him with about a Section 1983 presentation she was scheduled to speak at in April 2017.

106.   However, presenting at that seminar required Ms. Baines to perform substantial preparatory work and Ms. Baines eventually withdrew since she was unable to perform those task, oversee the City's cases and work on her health at the same time.

107.   The City was clearly not intent on removing Ms. Baines' cases from her as shown by the fact that the City took no action when Ms. Baines informed Ms. Patrick in an email that she was forced to continue to work on a pending trial because Ms. Jones refused to assist.

16

108.   When Ms. Baines was preparing to return to work in the office at the expiration of her FMLA leave, Ms. Baines followed the City's instructions.

109.   Ms. Baines submitted a letter from her doctor on February 24, 2017 indicating that she was cleared to return to work with restrictions.

110.   There was no set form that Ms. Baines' physician was required to complete.

111.   The instructions were that Ms. Baines provide a "fitness to return to work from a care provider with insight into your condition no later than 24 hours in advance of your return."

112.   Ms. Baines did so and yet the City refused to allow her to return to work because they regarded Ms. Baines as disabled.

113.   As evidence, Ms. Yvonne Yancey (Commissioner of HR) herself states that the medical release of a licensed professional counselor with a long history of treating Ms. Baines and a deep and clear understanding of Ms. Baines condition "does little to assuage your managers' legitimate concerns about your fitness to return to work."

114.   Ms. Baines' managers are not trained counselors and were not engaged in meaningful treatment of Ms. Baines and as such, only possess a discriminatory perception of, not valid insight into, Ms. Baines' psyche or fitness for duty.

115.   The City also ignored its own policy regarding disputed assessments.

116.   If the City had followed its own guidelines in the face of a disputed assessment, Ms. Baines would have been assessed by three physicians (one of the City's choosing, one of her choosing, and one selected/agreed upon by both the City and Ms. Baines), and any differing assessments should have been reviewed in arbitration.

117.   This was never even suggested.

118.   Due to Ms. Baines managers' discriminatory bias, the City dismissed the release to return to work recommendation of the therapist who possessed the most historical knowledge of Ms. Baines medical condition and then did not abide by its own policy in its handling of the additional fitness for duty assessment demands.

119.   In March 2017, Ms. Baines filed a Charge of Discrimination with the Equal Employment Opportunity Commission based on the sexual harassment against her and the disability discrimination to which she was subjected under the ADA.

120.   By early July 2017, both the City and Ms. Baines were in close dialog with Dr. Mark Ackerman from whom she was obtaining an independent medical exam relating to her ability to work.

18

121.   The City knew that Ms. Baines was going to be released to return to work.

122.   However, rather than wait for Dr. Ackerman to finalize his report, the City terminated Ms. Baines.

123.   The City's action was an intentional, preemptive strike to get rid of Ms. Baines.

124.   The City regarded Ms. Baines as disabled regardless of what licensed professionals said and did not want to have Ms. Baines around because of the stigma associated with her disability.

125.   On Ms. Baines' separation notice, the City listed that Ms. Baines' services were no longer needed.

## Governmental and Decision Maker Liability

126.   The highest City official(s) with responsibility to protect Ms. Baines against sexual harassment had actual knowledge of Ms. Shahar's illegal actions giving rise to this Complaint.

127.   Despite such actual knowledge, these officials failed to take reasonable, prompt, remedial action as required by the City anti-harassment policies and federal law to protect Ms. Baines' right to be free from Ms. Shahar's sexual harassment. Instead, those officials caused Defendant City to terminate Ms. Baines while

retaining Ms. Shahar.

128.   Ms. Shahar, along with the City officials who know of Ms. Shahar's illegal harassment and failures to stop it, acted under color of state law when committing their acts or omissions giving rise to this Complaint as all of their conduct was perpetrated using the power and authority of their positions as City officials.

129.   At all times material to this Complaint, it was clearly established law that subjecting an employee to sexual harassment or a sexually hostile working environment based upon gender violates the Equal Protection Clause.

130.   At all times material to this Complaint, it was clearly established law that a supervisor may not take an adverse employment action against a subordinate because she rejects or complains about her sexual advances.

## Punitive Damages Allegations

131.   Defendant Shahar undertook all the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Ms. Baines and her federally protected rights.

132.   Additionally, and in the alternative, Defendant Shahar undertook all of the above-pled conduct with reckless disregard for the Ms. Baines and her federally protected rights.

20

## COUNT I
## Sexual Harassment/Gender Discrimination under 42 U.S.C. § 1983
## Against Defendant City of Atlanta and
## Defendant Shahar in her Individual Capacity

133.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

134.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Ms. Baines to equal protection under the laws regardless of her gender.

135.   Defendant Shahar violated Ms. Baines's rights to equal protection by, among other things, subjecting her to a sexually harassing and hostile working environment.

136.   Defendant Shahar, Ms. Hampton, and the City violated Ms. Baines' rights to equal protection by taking adverse employment actions against Ms. Baines for her refusal to acquiesce to sexual advances, for reporting such harassment, and because of her gender.

137.   Ms. Shahar did not take similar actions against men in the department.

138.   Defendant City violated Ms. Baines' rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

139.   The conduct of Defendants constitutes unlawful sexual harassment,

21

based upon gender, in violation of the Equal Protection Clause.

140.   Additionally, and in the alternative, Defendants' unlawful conduct constitutes sexual harassment culminating in an ultimate employment action against Ms. Baines.

141.   Defendants undertook all the unlawful conduct giving rise to the Ms. Baines' claims while acting under color of state and local law.

142.   Defendants' unlawful conduct violated the above-pled clearly established law.

143.   As a direct and proximate result of all the Defendants' actions, Ms. Baines has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

144.   Defendants undertook their unlawful conduct intentionally and maliciously with respect to Ms. Baines and her federally protected rights, entitling Ms. Baines to recover punitive damages against them.

145.   Alternatively, Defendants undertook their unlawful conduct recklessly with respect to the Ms. Baines and her federally protected rights, entitling Ms. Baines to recover punitive damages against them.

## COUNT II
### Sexual Harassment/Gender Discrimination
### Under Title VII of the Civil Rights Act of 1964
### Against Defendant City of Atlanta

146.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

147.   Defendant City violated Ms. Baines' rights under Title VII by, among other things, subjecting her to a sexually harassing and hostile working environment, taking adverse employment actions against her for her refusal to acquiesce to sexual advances, and by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct.

148.   Defendant City's conduct constitutes unlawful sexual harassment by creating an unlawful hostile working environment, based upon gender, in violation of Title VII.

149.   Additionally, Defendant City's unlawful conduct constitutes sexual harassment culminating in tangible employment actions against Ms. Baines.

150.   As a direct and proximate result of Defendant City's actions, Ms. Baines has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT III
### Retaliation in Violation of Title VII
### Against Defendant City of Atlanta

151.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint. Title VII prohibits employers from retaliating against employees who report or oppose sexual harassment.

152.   The City unlawfully retaliated against Plaintiff, in violation of her rights under Title VII by, among other things, taking adverse employment actions against her because she opposed and/or reported Defendant Shahar's sexually harassing behavior.

153.   The City's conduct constitutes unlawful retaliation in violation of Title VII.  As a direct and proximate result of the City's actions, Ms. Baines has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

### COUNT IV
### Violation of ADA – Regarded As Disabled

154.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

155.   At all times relevant hereto, the City has been subject to the requirements of Title I of the Americans with Disabilities Act as amended.

156.   At all times relevant hereto, Ms. Baines was an individual with a

24

disability as defined under the ADA, 42 U.S.C. § 12102 (1)(C) because The City regarded her as a person with an impairment as defined by the Act.

157.   Moreover, at all times relevant hereto, Ms. Baines has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

158.   The City refused to reinstate Ms. Baines when she was released to return to duty in March 2017 and terminated Ms. Baines July 2017 because it regarded her as disabled.

159.   The City's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

160.   As a direct and proximate result of the City's intentional discrimination, Ms. Baines has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

161.   The City's actions have caused and continue to cause Ms. Baines to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT V
## Actual Discrimination and Failure to Accommodate in Violation of ADA

162.   Ms. Baines incorporates by reference all the preceding paragraphs of

the Complaint.

163.   At all times relevant hereto, the City has been subject to the requirements of Title I of the Americans with Disabilities Act, as amended.

164.   At all times relevant hereto, Ms. Baines was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

165.   The City was aware of Ms. Baines's disabilities and history and record of disability.

166.   At all times relevant hereto, Ms. Baines has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

167.   Ms. Baines's disabilities substantially limited one or more major life activities.

168.   Ms. Baines requested accommodation from the City relating to her disabilities: medical leave of a definite duration.

169.   The City refused to reinstate Ms. Baines when she was released to return to work thereby failing to accommodate Ms. Baines and terminated her employment because of her disability.

170.   The City also refused to reinstate Ms. Baines when she was released to return to work and terminated her employment because of her disability and record

of disability.

171.   The City's actions amount to a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

172.   As a direct and proximate result of the City's intentional discrimination, Ms. Baines has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

173.   The City's actions have caused, continue to cause, and will cause the Ms. Baines to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT VI
## Retaliation in Violation of the ADA

174.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

175.   At all times relevant hereto, The City has been subject to the requirements of Title I of the ADA.

176.   At all times relevant hereto, Ms. Baines was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

177.   In December 2016, Ms. Baines engaged in protected activity under the ADA when she applied for FMLA leave for treatment for her ADA-covered disability.

178.   Ms. Baines also engaged in protected activity when she filed a Charge of Discrimination with the EEOC in March 2017.

179.   The City failed to reinstate Ms. Baines at the end of her FMLA leave even though she was released to return to work, subjected her to unwarranted psychological examinations, and terminated her employment in retaliation for her request for accommodation and because she filed a Charge of Discrimination.

180.   The City's actions in retaliating against Ms. Baines following her requests for reasonable accommodation and filing a charge of discrimination were committed with reckless disregard for her right to be free from retaliatory treatment because of her opposition to discriminatory practices in violation of the ADA.

181.   The effect of the City's above-mentioned conduct has been to deprive Ms. Baines of equal employment opportunities and benefits due to her because of her willingness to oppose such discriminatory practices.

182.   The actions taken against Ms. Baines by the City have caused her to suffer both monetary and non-monetary damages.

183.   Accordingly, Ms. Baines is entitled to the equitable and monetary relief

set forth in the following prayer for relief for the City's violation of her rights under the ADA.

## COUNT VII
## <u>Interference with FMLA Leave</u>

184.   Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

185.   Ms. Baines was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

186.   Ms. Baines used FMLA leave for her own medical care.

187.   The City refused to return Ms. Baines to her position with the City, despite Ms. Baines's clearance for return to work.

188.   The City prevented Ms. Baines from exercising the rights provided to her under the FMLA.

189.   The City's actions in interfering with Ms. Baines' federal right to FMLA leave were committed with reckless disregard for her right to take up to 12 work weeks of leave to care for her serious health condition and to return to her position with the City, in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

190.   The effect of the City's actions has been to deprive Ms. Baines of a job, as well as income in the form of wages, health insurance, prospective retirement

benefits, social security, and other benefits due her solely because of her right to leave under the FMLA.

191.    As a result, Ms. Baines is entitled to both equitable and monetary relief for the City's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorney's fees and costs of litigation.

192.    Ms. Baines is also entitled to liquidated damages for the City's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT VIII
## Retaliation in Violation of the FMLA

193.    Ms. Baines incorporates by reference all the preceding paragraphs of the Complaint.

194.    Ms. Baines was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

195.    In refusing to reinstate Ms. Baines when she was released to return to work and in terminating her employment, the City retaliated against Ms. Baines for attempting to exercise her right to take leave as provided under the FMLA.

196.    The City's actions in retaliating against Ms. Baines for attempting to

exercise her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment because of her exercise of her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(2).

197.   The effect of the City's actions has been to deprive Ms. Baines of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her solely because of her exercise of her rights under the FMLA.

198.   As a result, Ms. Baines is entitled to both equitable and monetary relief for the City's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

199.   Ms. Baines is also entitled to liquidated damages for the City's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

### PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

a.   A declaratory judgment that Defendants violated the Plaintiff's rights under the Equal Protection Clause, Title VII, the ADA, and the FMLA;

b.   An injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

31

c.      Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful denial termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

d.      Reinstatement of Plaintiff to her former position with the or in the alternative, front pay to compensate Plaintiff for her lost future wages, benefits, and pension;

e.      Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.      Punitive damages, against Defendant Shahar in her individual capacity, in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant Shahar for her conduct toward Plaintiff and deter her from similar conduct in the future;

g.      Liquidated damages for Defendant City's willful violations of the FMLA;

h.      Reasonable attorney's fees and costs; and

i.      Other and further equitable and monetary relief as the Court deems just and proper.

Respectfully submitted this 15th day of January, 2019.

LEGARE, ATTWOOD & WOLFE, LLC

*s/*Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
T: 470.823.4000
F: 470.201.1212
Counsel for Plaintiff