## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TAMARA BAINES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:19-CV-00279-TWT-JSA |
| CITY OF ATLANTA, GEORGIA; and | ) | |
| ROBIN SHAHAR, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT ROBIN SHAHAR'S BRIEF IN SUPPORT OF HER MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND 28 U.S.C. § 1927

## I.    INTRODUCTION

Plaintiff filed suit against Ms. Shahar on January 15, 2019, alleging that Shahar violated 42 U.S.C. § 1983 by sexually harassing her and subjecting her to gender discrimination at work. Specifically, Plaintiff asserted that Shahar placed her hand on Plaintiff's thigh on multiple occasions between February 2016 and December 6, 2016. (Dkt.1 ¶¶ 34-36, 50, 79-80; Dkt. 7 ¶¶ 1, 36, 50). At the time she filed that single claim against Shahar, Plaintiff knew that the statute of limitations for her Section 1983 claim had long since expired, yet she persisted.

In her first articulation of her claim, Plaintiff averred that, in addition to

touching her, Shahar was also somehow implicated in the City of Atlanta's decisions to defer Plaintiff's return to work and terminate her employment. Plaintiff based these assertions on Shahar's supposed authority stemming from her role as LGBT Advisor to the Mayor, Shahar's supposed discussion with the fitness for duty examiner, and a single reference to the word "managers" in a letter to Plaintiff from the City, which Plaintiff averred referred to Shahar. In sum, Plaintiff alleged she could support a sexually hostile work environment claim, *quid pro quo* sexual harassment, and/or disparate impact discrimination. (Dkt. 1, ¶¶ 135-37). By contrast, both Shahar's *and* the City of Atlanta's Answers informed Plaintiff, under oath, that Shahar had no role at all in any decision respecting Plaintiff's employment after December 6, 2016. (Dkt. 6, ¶¶ 1, 28, 111, 122-125, 128, 168; Dkt. 7, ¶¶ 1, 28, 128); see also Dkt. 7-1.

On April 11, 2019, Shahar filed a Motion for Judgment on the Pleadings, arguing in part that Plaintiff's claim against her was barred by the statute of limitations. (Dkt. 11).[1] Rather than withdraw her claim, with or without prejudice, Plaintiff instead filed an Amended Complaint, which the Court later entered. (Dkt. 15; Dkt. 48). In opposing Shahar's Motion, Plaintiff's counsel argued that she needed time to engage in discovery, after which they expected to prove that "Shahar played

---

[1]   Plaintiff's claim against Shahar is subject to a two-year statute of limitations. See *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986).

an instrumental role in the subsequent adverse actions Plaintiff suffered," including evidence that Shahar improperly spoke with Plaintiff's fitness for duty examiner. (Dkt. 15 at Ex. 2; Dkt. 48 ¶ 124). Plaintiff also argued, for the first time, that she could prove that Shahar unlawfully assigned her work while she used Family and Medical Leave Act ("FMLA") leave in late 2016 and early 2017. (Dkt. 16; Dkt. 48 at ¶¶ 107-108). This claim marked the first installment in Plaintiff's evolving set of theories to justify her untimely suit against Shahar.

On June 17, 2019, Shahar's counsel wrote to Plaintiff's counsel to protest their continued pursuit of an untimely claim against Shahar. (Letter, attached as Exhibit A). Plaintiff's counsel never responded. Four days later, the City of Atlanta attested in its verified interrogatory responses that City Attorney "Jeremy Berry, Esq. alone made the decision to terminate Plaintiff's employment," and that City Attorney Cathy Hampton, Esq. and Commissioner of Human Resources Yvonne Yancy alone "made the decision to require Plaintiff to pass a fitness for duty evaluation prior to returning to work." (COA Responses to Plaintiff's Interrogatory Nos. 5 and 6, attached as Exhibit B). Plaintiff and her counsel ignored these assertions.

Three months later, on September 10, 2019, Shahar filed a second Motion for Judgment on the Pleadings, renewing her argument that Plaintiff's claim against her was barred by the statute of limitations. (Dkt. 57). Notwithstanding the City of

Atlanta's sworn interrogatory responses disclaiming any involvement by Shahar in the disputed decisions, Plaintiff again argued (successfully) that she intended to prove that Shahar played a role in the decisions to subject Plaintiff to a fitness for duty evaluation and later fire her. (Dkt. 62; Dkt. 105).

The following month, on October 19, 2020, Shahar filed her first Motion for Rule 11 Sanctions after providing Plaintiff with the requisite 21-day notice, again arguing that Plaintiff's claim against her was untimely in light of the record evidence. (Dkt. 209). Responding thereto, Plaintiff articulated a new, unpled theory that her claim was timely because Shahar lied to a police officer on December 6, 2016 by reporting Plaintiff's threat to kill herself with a gun, thereby somehow causing a chain of fated events, including the alleged adverse employment actions decided by others. This included shifting from arguing that Shahar communicated with the fitness for duty examiner to derail Plaintiff's fitness determination to claiming the examiner's determination was influenced when the City provided the examiner with a police report referencing Shahar's statement that Plaintiff was suicidal on December 6. (Dkt. 221). This Court later denied Shahar's Motion as premature, given that Plaintiff insisted she still needed to depose former City Attorney Hampton and the City's Employee Assistance Program Director, Dr. Adrienne Bradford.

On April 2, 2021, following the depositions of Ms. Hampton and Dr. Bradford,

Shahar moved for summary judgment on multiple grounds, including that Plaintiff's claim against her was untimely. Respecting Plaintiff's latest theories to extend the statute of limitations, Shahar cited numerous witnesses' testimony asserting she played no role in the City's rejection of Plaintiff's request to return to work or the termination of her employment. Shahar also argued that Plaintiff's newfound, unpled theory concerning her report to a police officer bore no nexus to Plaintiff's gender.

Rather than concede the point, Plaintiff responded with three more unpled theories: (1) Shahar's submission of two withdrawals of counsel for Plaintiff in January and February of 2017 were actionable sexual harassment;[2] (2) Shahar's meeting with the City's outside counsel to discuss Plaintiff's claims in March 2017 indirectly influenced the new City Attorney to fire Plaintiff in July 2017; and (3) Shahar's December 6, 2016 statement to the police officer caused the City, in March 2017, to force Plaintiff to undergo a fitness for duty examination.

Equally telling was Plaintiff's abandonment of her prior articulated reasons for suing Shahar. By this time, Plaintiff had long abandoned her original assertion that

---

[2]     Even this argument went through a series of evolutions. Plaintiff first asserted that Shahar's *entries of appearance* were sexually harassing. (Dkt. 221). After later recognizing that those documents were filed outside of the limitations period, Plaintiff switched course to assert that Shahar's filings of *withdrawals of counsel* somehow constituted sexual harassment. (Dkt. 263 at 8-9; Dkt. 304 at 34).

Shahar engaged in disparate impact mistreatment of other women. (Dkt. 263 at 12, where Plaintiff made one passing reference to "disparate impact"). Similarly, Plaintiff claimed she was still pursuing a *quid pro quo* theory but pointed to no record evidence to support this allegation. (Dkt. 263). Plaintiff likewise discarded her earlier assertion that Shahar exercised control over her employment given her role as the LGBT Advisor to the Mayor. After reviewing the record, Magistrate Judge Anand recommended that summary judgment be granted to Shahar, as none of Plaintiff's arguments constituted timely, actionable sexual harassment.

Undeterred, Plaintiff objected to the Report and Recommendation on November 29, 2021. In doing so, she raised yet more previously unarticulated arguments, including: (1) Shahar's statement that Plaintiff wished to kill herself with a gun somehow continued each day Shahar did not recant it; (2) Shahar's alleged December 6, 2016 *quid pro quo* statement somehow continued each time Shahar did anything, such as sign a withdrawal of counsel filing; and (3) Plaintiff's alleged mental incompetence equitably tolled the statute of limitations.

This Court subsequently adopted the Magistrate Judge's recommendation, succinctly holding that "Plaintiff's post-January 15, 2017 allegations bear little relation to the hostile work environment she alleges prior to that date and, in any event, are not the type of severe or pervasive intimidation, ridicule, or insult that may

form the basis of a hostile work environment claim." (Dkt. 320 at 6).[3]  This second

Motion for Sanctions follows.

## II.    <u>STATEMENT OF FACTS</u>

Back in January 2020, Plaintiff conceded she had no contact with Shahar after

December 6, 2016. (Plaintiff's Fourth Amended Response to Shahar's

Interrogatory Nos. 3 and 10, attached as Exhibit C; *see also* Deposition Transcript

of Tamara Baines ("Baines Depo."), attached as Exhibit D, 362:23-363:11). But for

Plaintiff's claim against Shahar to be timely, she needed to tie Shahar to an adverse

employment action or sexually harassing act on or after January 15, 2017. See *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (if "an act contributing to

the claim occurs within the filing period, the entire time period of the hostile

environment may be considered…" if the acts are sufficiently related to the

underlying harassment claim). Discrete acts, including retaliation and discrimination,

do not contribute to a sexually hostile work environment claim. See *Davis v. Coca-*

*Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008).

None of Plaintiff's pled or everchanging and increasingly farfetched unpled

theories ever met this standard, however; Plaintiff's dogged pursuit of an untimely

---

[3]    Plaintiff's spurious filings continue with her March 17, 2022 Motion for Entry
of Judgment, suggesting she will appeal the dismissal of her claim against Shahar.

claim in the face of all evidence and legal precedent merits sanctions.

    A.    *Plaintiff Long Knew That Shahar Played No Role Whatsoever in Her Request to Return to Work or Fitness for Duty Evaluations.*

        i.    <u>Shahar Was Not Involved in the City's Decision to Request That Plaintiff Undergo a Fitness for Duty Evaluation.</u>

In her interrogatory responses, Plaintiff asserted that the <u>only</u> evidence she had that Shahar was allegedly involved in the City's decision to demand that she submit to a fitness for duty evaluation was one word in a letter she received from the City of Atlanta's former Commissioner of Human Resources. (Ex. C at 18). In fact, that letter merely states Plaintiff's "managers" had concerns about her fitness to return to work. *Id.*

Plaintiff reiterated this belief in her deposition based solely on her assertion that Shahar indirectly assigned her work in 2017 and that Shahar filed certain entries of appearances. (Baines Depo., Ex. D at 350:24 –351:22). When asked about her role in this decision, however, Shahar testified she was unaware that Plaintiff was required to take a fitness for duty exam until this litigation. (Deposition Transcript of Robin Shahar, ("Shahar Depo."), attached as Exhibit E, 207:4-8). Likewise, Shahar denied any role at all in the City's determination that Plaintiff's first medical release to return to work was unsatisfactory. *Id.* at 226:22-227:2.

Even if this testimony somehow failed to satisfy Plaintiff, the City of Atlanta's

30(b)(6) witness also confirmed that Shahar did not review or otherwise evaluate Plaintiff's medical release to return to work. (Deposition Transcript of Kimberly Patrick, ("Patrick Depo."), attached as Exhibit F, 180:11-20). The City's Human Resources Director and Human Resources Commissioner likewise testified they never communicated with Shahar about Plaintiff's employment after December 6, 2016. (Deposition Testimony of Pam Beckerman ("Beckerman Depo."), attached as Exhibit G, at 70:24-71:1; Deposition Testimony of Yvonne Yancy ("Yancy Depo."), attached as Exhibit H, 202:16-18; 203:11-204:17). Similarly, the City's Employment Assistance Director testified she had no contact with Shahar about Plaintiff after December 7, 2016, when Shahar forwarded her a voicemail transcription from Plaintiff's therapist. (Deposition Testimony of Adrienne Bradford ("Bradford Depo."), attached as Exhibit I at 145:17-146:7, 147:3-149:2). Finally, the ultimate decisionmaker, City Attorney Hampton, testified she never spoke with Shahar about Plaintiff's medical situation. (Deposition Testimony of Cathy Hampton, ("Hampton Depo."), Ex. J at 50:21-24, 63:15-64:25, Bradford Depo., Ex. I at 83:3-84:21, 145:17-146:7, 147:3-23, 148:1-10, 148:25-149:2, 149:3-11, Ex. 9).

Moreover, a plethora of evidence has long demonstrated that Plaintiff's claim that Shahar was ever her manager was misplaced, thereby putting to rest once and for all Plaintiff's theory that the word "managers" in a letter from the Human Resources

Commissioner somehow referenced Shahar. (Baines Depo., Ex. D at 348:11-355:17; Shahar Depo., Ex. E at 15:2-16:2, 40:17-24, 42:1-5; Yancy Depo, Ex. H at 208:12-16; Patrick Depo., Ex. F at 34:15-21; Hampton Depo., Ex. J at 22:2-4; Deposition of Valorri Jones ("Jones Depo."), attached as Ex. K at 11:13-17).

  ii. <u>Shahar Never Communicated with Plaintiff's Medical Evaluators.</u>

  As referenced above, Plaintiff staved off an early dismissal of her claim against Shahar by asserting (without evidence) in her Amended Complaint that Shahar might have improperly influenced the outcome of her first fitness for duty evaluation by communicating with the examiner, Dr. Ojelade. In her interrogatory responses and deposition testimony, Plaintiff hypothesized this occurred because Dr. Ojelade told Plaintiff she would speak with the individuals about whom Plaintiff expressed concerns. (Ex. C at 20; Baines Depo., Ex. D, 353:3-11).

  However, Shahar, Dr. Ojelade and the City of Atlanta's 30(b)(6) witness each testified that Shahar never spoke with Dr. Ojelade, much less about Plaintiff, as of July 21, 2020. (Shahar Depo., Ex. E, at 207:2-3, 227:3-7; Deposition Transcript of Dr. Ifetayo Ojelade ("Ojelade Depo."), attached as Exhibit L, 147:23-148:9; Deposition Transcript of Derris Mitchell ("Mitchell Depo."), attached as Exhibit M, 34:6-10). Notably, Dr. Ojelade also denied yet another theory Plaintiff advanced for the first time in her deposition – namely, that Dr. Ojelade flunked Plaintiff on her

fitness for duty exam in a kindly gesture to shield her from Shahar. (Ojelade Depo., Ex. L, at 180:23-181:5; 181:15-16). Nor did any evidence ever exist that Shahar communicated with Plaintiff's second fitness for duty medical provider, Dr. Ackerman. (Shahar Depo., Ex. E at 227:8-10; Deposition Transcript of Dr. Mark D. Ackerman ("Ackerman Depo.") attached as Exhibit N, 18:1-9).[4]

B.    *Plaintiff Long Knew That Shahar Did Not Influence Her Termination.*

Likewise, discovery repeatedly repudiated Plaintiff's baseless claim that Shahar influenced Plaintiff's termination. (Dkt. 105 at 19-20). When pressed during her deposition, Plaintiff merely reiterated her fervent belief that Shahar was somehow involved in the City's decision to fire her because she believed Shahar was her supervisor and Shahar told her "when it came to LGBT employees, she is the City." (Baines Depo., Ex. D at 348:24-349:15). When pressed further, Plaintiff resorted to circular reasoning and pure speculation – because she complained to Dr. Ojelade about Shahar and Dr. Ojelade found Plaintiff unfit, that determination must have been because of Shahar, although that decision occurred months before her employment

---

[4]    Indeed, Plaintiff discarded this argument by summary judgment but instead asserted that Shahar's December 6 statement about Plaintiff's suicidal threat caused Hampton and Yancy to require a fitness for duty examination three months later, which in turn, provoked Dr. Ojelade to find Plaintiff unfit to return to work. This claim was always nonsensical and was always countered by the record. (Ojelade Depo., Ex. L, 112:13-18; 119:18-131:11; Bradford Depo., Ex. I, 120:9-122:6).

termination. (Baines Depo., Ex. D at 349:16-23).

In fact, the City of Atlanta consistently informed Plaintiff and her counsel that "Jeremy Berry, Esq. alone made the decision to terminate Plaintiff's employment." (Ex. B at 13); (Patrick Depo., Ex. F, at 145:22-25, 160:4-10; 180:21-24). Shahar's testimony only bolstered this contention. *Id.* at 227:11-14. And former City Attorney Berry repeatedly testified that he decided to terminate Plaintiff's employment without any influence whatsoever from Shahar. (Deposition Transcript of Jeremy Berry, ("Berry Depo."), attached as Exhibit O, 54:1-20; 55:23-57:05, 75:17-20).

### C. Plaintiff Repeatedly Invented New, Unpled Futile Theories.

Plaintiff briefly articulated a conspiratorial assumption that Shahar's December 6 statement regarding Plaintiff's suicidal threat somehow became timely when a supervisor signed the police report around the time Plaintiff attempted to return to work. (Deposition Transcript of Shaun Houston, ("Houston Depo."), attached as Ex. P, 29:3-20, 37:7-39:23, 63:24-64:12). Yet no evidence ever existed that Shahar in any way influenced the police supervisor's belated approval of the report, or that the delayed approval was either unlawful or sexual in nature. Nor did any evidence ever suggest that any decisionmaker relied on it. Indeed, Plaintiff even failed to ask City Attorney Hampton about it in her deposition, and Hampton testified she learned of Plaintiff's suicidal threat from the Human Resources Commissioner, not the report.

12

(Hampton Depo., Ex. J, at 47:10-24, 60:1-64:25). Moreover, the Commissioner never saw the report until preparing for her deposition. (Yancy Depo., Ex. H, at 72:19-25).

At another point, Plaintiff claimed that when Shahar repeated Plaintiff's suicidal threat on December 6, 2016, this somehow caused the City, almost four months later, to require Plaintiff to sit for a fitness for duty examination.  This too flew in the face of the record. The record long demonstrated that Plaintiff made separate and distinct threats to kill herself to Commissioner Yancy and the Deputy Commissioner of Human Resources outside of Shahar's presence and independent from Shahar's statement to the police officer later that day. (Deposition Transcript of Angelia Addison, ("Addison Depo."), attached as Ex. Q, 12:13-15, 38:10-21, 39:10-24, 64:11-17, Yancy Depo., Ex. H at 66:11-13, 72:19-23, 74:10-75:3, 205:10-23, 211:13-19). Likewise, discovery revealed that Plaintiff's boss learned of Plaintiff's threat to shoot herself from Commissioner Yancy, and never spoke with Shahar about the events of December 6. (Hampton Depo., Ex. J at 47:10-48:13, 50:21-24). Plaintiff also discussed her threat and mental state with the City's Employee Assistance Program Director. (Bradford Depo., Ex. I at 18:9-14, 27:5-28:15). None of these individuals relied on Shahar's statement when evaluating Plaintiff's request to return to work; Plaintiff knew this but persisted in her quixotic effort to sue Shahar. (Ex. B; Shahar Depo., Ex. E at 207:4-8; Yancy Depo., Ex. H at 15:13-19, 74:10-75:3, 140:12-

15, 205:10-23; Hampton Depo., Ex. J at 50:21-24, 64:15-25; Bradford Depo., Ex. I at 18:9-14, 27:5-28:15; Addison Depo., Ex. Q at 12:13-15, 38:10-39:24, 64:11-17).

Plaintiff later shifted to another unpled theory that Shahar *indirectly* caused her termination. Plaintiff pointed to a meeting between Shahar and the City's outside counsel in March 2017 and a meeting with City Attorney Berry and this same outside counsel four months later. She speculated that Shahar somehow persuaded outside counsel to later manipulate the new City Attorney into firing Plaintiff. But Plaintiff never produced any evidentiary support for this allegation, and it was promptly dispelled when Berry testified that no one – including outside counsel – discussed with him whether Plaintiff should be fired. (Berry Depo., Ex. O, 36:3-37:19; 54:1-20, 55:23-57:05, 72:15-25, 73:7-75:20, 76:18-77:14; 80:14-82:6).

Plaintiff also asserted Shahar mistreated her by entering appearances as counsel of record in cases she worked on prior to her leave of absence. After realizing that these filings fell outside the statute of limitations, Plaintiff pivoted to declare that later filed withdrawals were the sexual harassment. But, as the Court noted, such filings are unrelated to Plaintiff's gender and cannot comprise a sexual harassment claim. See *Mangrum v. Republic Indus., Inc.*, 260 F. Supp. 2d 1229, 1248 (N.D. Ga.), aff'd, 88 F. App'x 390 (11th Cir. 2003). Again, this evolution belies the record as Shahar's supervisor directed her to file the appearances and withdrawals. (Shahar Depo., Ex.

14

E, at 193:16-194:3, 195:7-197:20; Patrick Depo., Ex. F at 34:22-35:3; 144:17-22).

Furthermore, as a matter of law, Plaintiff's ever shifting theories never had any bearing on the timeliness of her claim. Reporting a co-worker's suicidal threat, even if false, always lacked a nexus to Plaintiff's gender and thus could not rise to the level of sexual harassment. Likewise, Plaintiff's insistence that Shahar indirectly assigned her work, met with outside counsel, and filed pleadings in cases she worked on prior to her leave had no legal grounded connection to her sex. See *Chambless v. La.-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) (plaintiff's suit was time-barred where a timely promotion denial and termination were unrelated to untimely derogatory comments and touching of the plaintiff's leg); *Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 741-42 (11th Cir. 2020) (claim barred by the statute of limitations where no alleged sexual harassment occurred once the plaintiff was absent from the workplace, and she alleges no other timely acts of sexual harassment). Here, Plaintiff has never been able to identify a sexually harassing act by Shahar within the statutory timeframe, and Plaintiff was absent from the workplace and had no contact with Shahar for the duration of the statute of limitations.

Finally, when objecting to this Court's Report and Recommendation, Plaintiff posited for the first time that statements Shahar allegedly made on December 6 were timely because she did not recant them in 2017. But passive inaction obviously is not

a discrete act, much less one of sexual harassment that could save her hostile work environment claim. Additionally, Plaintiff argued for the first time that the statute of limitations should have been equitably tolled, contrary to the statutory language,[5] which the District Court, in its discretion, declined to consider. Plaintiff declined to file a Reply. Plaintiff and her counsel should be sanctioned for steadfastly refusing to dismiss Shahar and requiring her to defend herself against this futile claim.

## III.   <u>LEGAL AUTHORITY</u>

### A.   *The Rule 11 Standard for Imposing Sanctions*

"The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1379 (N.D. Ga. 2013) (quoting *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001)). Subsection (b) of that Rule "addresses what an attorney certifies to a court when he files a paper." *Id.* That provision requires an attorney, in submitting a pleading *or advocating for it*, to certify that its submission is made for no improper purpose and that both a factual and legal basis exists to support it. Fed. R. Civ. P. 11(b)(1)-(3). Notably, while "subsection (b) is limited to filings signed by an attorney or unrepresented party, the Court may

---

[5]   For equitable tolling to apply, the incompetence must exist "when the cause of action accrues." O.C.G.A. § 9-3-90. Plaintiff identified no such supporting evidence.

16

nonetheless sanction a represented party for a subsection (b) violation." *Homecare*, 952 F. Supp. 2d at 1379 (citing Fed. R. Civ. P. 11 Adv. Comm. Note).

In turn, sanctions are warranted when a party's submission: "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Id.* at 1380 (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). Among other things, sanctions are justified when "an attorney or party **continues** '**insisting upon a position after it is no longer tenable**… [because] an attorney has a continuing obligation to make inquiries." *Id.* at 1384. (emphasis added) (internal citations omitted). See also *Woodhull v. Mascarella*, 699 Fed. App'x 872, 876 (11th Cir. June 23, 2017) ("Sanctions are appropriate under Rule 11 when a party 'insist[s] upon a position after it is no longer tenable.'") (quoting *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010)); *Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 Fed. App'x 823, 827 (11th Cir. Apr. 28, 2017) ("The use of Rule 11 is particularly appropriate when a party knowingly makes allegations that are objectively frivolous and persists in that 'position after it is no longer tenable.'").

The Eleventh Circuit Court of Appeals has found sanctions appropriate *after* a pleading is filed when discovery reveals the frivolity of a claim. *Turner v. Sungard*

17

*Bus. Sys., Inc.*, 91 F.3d 1418, 1421-22 (11th Cir. 1996) (holding the plaintiff's attorney knew there was no factual support after the defendant's deposition and by refusing to dismiss the case, he wasted the defendant's and the court's resources on summary judgment). Indeed, the Advisory Committee Notes to Rule 11 specifies that "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Advisory Committee Notes, Fed. R. Civ. P. 11.

> In fashioning an appropriate Rule 11 sanction, courts consider several factors:
>
> (1) whether [the party's] and its counsel's improper conduct was willful or negligent; (2) whether the conduct was part of a pattern or an isolated event; (3) whether the conduct infected the entire pleading, or only one particular count; (4) whether [the party's] counsel has engaged in similar conduct in other litigation; (5) whether the conduct was intended to injure; (6) what effect the conduct had on the litigation process in time or expense; (7) whether [the party's] counsel is trained in the law; (8) what amount, in light of financial resources, is needed to deter [the party] and its counsel from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants.

*Id.* at 1385 (internal citation omitted).

The kind of sanction is up to a court's discretion. *Id.* To deter similar conduct, an appropriate sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the [Rule 11] violation." Fed. R. Civ. P. 11(c)(4). Further, a court may award a party its reasonable expenses, including attorney's fees, incurred in bringing a Rule 11

Motion.  Fed. R. Civ. P. 11(c)(2). See also *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 383-84 (11th Cir. 1992) ("This Court has clearly held that a party can collect the expense of pursuing a Rule 11 claim.").

### B.     Section 1927's Standard for Imposing Sanctions

Apart from Rule 11 sanctions, Congress has provided that "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees..." 28 U.S.C. § 1927. Sanctions under this statute are proper when an attorney's conduct is objectively unreasonable and vexatious. *Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649, 653 (11th Cir. 2019); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

Similar to Rule 11, Section 1927 sanctions are merited where an attorney pursues litigation once it is discovered that no facts support the stated position. See *Rodriguez v. Banco Cent.*, 155 F.R.D. 403 (D. Puerto Rico 1994). Also, like Rule 11, sanctions are proper where no legal basis warrants the continuation of litigation, including where the claim is barred by the statute of limitations. For "when parties attempt to pursue civil litigation with legal theories apparently foreclosed by statute and precedent, they must do so with candor toward the court and with a sense of whether their argument is appropriate and reasonable." *United States v.*

*Milam*, 855 F.2d 739, 745 (11th Cir. 1988) (awarding Section 1927 and Rule 11 sanctions where a defense of statute of limitations was pursued against established precedent). See also *Fowler v. Merrill Lynch Credit Corp.*, No. CIV.A. 1:00CV1641GET, 2006 WL 2224019, at *4 (N.D. Ga. Aug. 2, 2006) (Tidwell, J.) (Attorney's failure to investigate statute of limitations was sanctionable). Finally, Section 1927 awards may be made against "any attorney admitted to conduct cases," including a law firm. *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

## IV.   ANALYSIS

### A.    *Plaintiff and Her Counsel Should be Sanctioned Under Rule 11.*

#### i.    Plaintiff and Her Counsel Knew This Claim was Time-Barred.

It is doubtful that Plaintiff or her counsel ever performed the reasonable inquiry necessary to bring Plaintiff's sexual harassment claim against Shahar in the first place, though they at least knew at the time of filing that Plaintiff and Shahar had had no contact in over two years. Certainly, following the production of over 14,000 pages of documents and twenty depositions, it was clear that Plaintiff's claim against Shahar was time-barred. This is because no factual support ever existed to show that Shahar had any involvement in any aspect of Plaintiff's employment after December 6, 2016.

Quite the opposite. The uncontested record conclusively demonstrated that Shahar was unaware that Plaintiff ever asked to return to work from her leave of absence, that the City denied that request, or that the City directed Plaintiff to

undertake a fitness for duty evaluation. (Shahar Depo., Ex. E at 207:4-8, 226:22-227:2; Ex. B). Shahar never spoke with either of the individuals who evaluated Plaintiff's mental health, nor was she consulted by anyone at the City in that process. (Shahar Depo., Ex. E at 207:2-3, 227:3-10; Ojelade Depo., Ex. L at 147:23-148:9, 180:23-181:16; Ackerman, Depo., Ex. N at 18:1-9; Patrick Depo., Ex. F at 180:11-20; Beckerman Depo., Ex. G at 70:24-71:1; Mitchell Depo., Ex. M at 34:6-10; Yancy Depo., Ex. H at 140:12-15; 200:3-6; Hampton Depo., Ex. J at 50:21-24, 63:15-64:25, Bradford Depo., Ex. I at 83:3-84:21, 145:17-149:11). Finally, Shahar played no role in Plaintiff's termination and did not know why the City fired Plaintiff until after Plaintiff sued her. (Shahar Depo., Ex. E at 208:5-14; 227:11-14; Patrick Depo., Ex. F at 145:22-25, 160:4-10; 180:21-24; Berry Depo., Ex. O at 75:17-20; Bradford Depo., Ex. I at 156:11-17).

Notwithstanding this overwhelming evidence, Plaintiff and her counsel continued to improperly pursue this time-barred claim by spinning speculative suspicions unrelated to Plaintiff's sex and that did not rise to the level of harassment. These actions forced Shahar to expend the time and substantial personal resources to participate in extensive discovery and motions practice, including summary judgment. This is the very definition of bad faith. *See Silva*, 898 F.3d at 1340-41; *Milam*, 855 F.2d at 744-45 (11th Cir. 1988) (awarding sanctions where a defense of

statute of limitations was pursued against established precedent). Consequently, this Court should award Shahar monetary sanctions as set forth below.

        ii.      <u>Monetary Sanctions are Justified.</u>

The various factors courts should consider in determining an appropriate sanction under Rule 11, *see, e.g, Homecare CRM*, 952 F. Supp. 2d at 1385, also support the imposition of monetary sanctions under Section 1927. Plaintiff's and her counsel's improper conduct has been willful, particularly since Shahar's deposition on June 10, 2020. At a minimum, Dr. Ojelade's June 11, 2020 deposition confirmed that Dr. Ojelade did not consult Shahar in conducting her fitness for duty evaluation (and indeed never spoke with Shahar at all); the City's interrogatory responses and July 21-22, 2020 30(b)(6) deposition testimony supported the fact that Shahar played no role in any of the purported adverse employment actions. Shahar's absence from these decisions was only corroborated by subsequent depositions. (Ex. B; Berry Depo., Ex. O at 54:1-20; 55:23-57:05, 75:17-20; Yancy Depo., Ex. H at 140:12-15; 200:3-6; Hampton Depo., Ex. J at 50:21-24, 63:15-64:25, Bradford Depo., Ex. I at 83:3-84:21, 145:17-149:11). Additionally, Plaintiff's assertion that Shahar indirectly assigned her work while on FMLA was based only on inadmissible hearsay and had nothing to do with Plaintiff's sex. Plaintiff's and her counsel's refusal to dismiss this claim following testimony by the relevant witnesses, including the decisionmakers,

constituted an ongoing pattern of misconduct, as opposed to an isolated event.

Moreover, Plaintiff and her counsel turned to increasingly implausible conspiracy theories again and again. This was willfully blind to the facts, the law, and the duty to the Court. Nor is this a singular occurrence. This Court has previously reprimanded Plaintiff's counsel's past attempts to revamp claims late in litigation. See, e.g., *Banks v. MarketSource, Inc.*, No. 1:18-CV-02235-WMR, 2020 WL 6291422, at *8 (N.D. Ga. Mar. 20, 2020) (J. Ray, Mag. Anand) (disregarding Plaintiff's counsel's summary judgment response as the FMLA argument strayed too far from the complaint); *Slayton v. Dekalb Cnty., Ga.*, No. 1:18-CV-3869-CC-JKL, (N.D. Ga. Dec. 11, 2019) (J. Cooper, Mag. Larkins) (rejecting Plaintiff's counsel's new arguments at summary judgment when they were absent from the complaint).

This misconduct also "infect[ed] the entire pleading," as the sole basis provided for naming Shahar as a party to this case was always conclusively refuted. *See Homecare CRM*, 952 F. Supp. 2d at 1385. Finally, Plaintiff and her counsel's conduct appears to have been intended to injure Shahar. The opening paragraph of Plaintiff's Complaint was intended to injure Shahar's reputation, as it alleged that she "had a pattern and practice of subjecting her female co-workers and subordinates, including Ms. Baines, to a hostile work environment and retaliating against them when they rejected her sexual advances." (Dkt. 1, ¶1). Yet Plaintiff admitted during her

deposition that she had no evidence to support that allegation. (Baines Depo., Ex. D, 391:25-393:14). Nonetheless, Plaintiff's counsel publicized this claim without making a reasonable inquiry into the facts and declined to retract their assertions.[6]

Notable, too, is Plaintiff's twenty-four-year experience as a civil rights trial attorney. (Baines Depo., Ex. D at 11:10-12) ("I am an extraordinary lawyer.") (*Id.* at 139:11-12). Plaintiff's counsel are also highly "trained in the law," and her lead counsel represents that she has practiced for many years, with an emphasis on employment and civil rights litigation. See https://law-llc.com/about-our-firm/cheryl-legare/#1585548812645-8093a734-bd38, last accessed March 14, 2022.

In light of this showing, monetary sanctions in the amount of all reasonable attorneys' fees, costs, and expenses incurred on Shahar's behalf in this action since June 10, 2020, including all reasonable attorney's fees and costs incurred in preparing Summary Judgment and this Motion, are proper and necessary to deter Plaintiff and her counsel from engaging in similar behavior in the future.

B.   *Plaintiff's Counsel's Vexatious Conduct Multiplied the Proceedings.*

At least since Shahar filed her Verified Answer and Motion for Judgment on

---

[6]   Saunders, Patrick *Trailblazing LGBTQ Attorney Accused of Sexually Harassing Coworker,* April 22, 2019, https://www.projectq.us/trailblazing-lgbtq-attorney-accused-of-sexually-harassing-co-worker/, last accessed March 22, 2021. ("Baines' attorney Cheryl Legare, of employment law firm Legare, Attwood & Wolfe, told Project Q they were confident in their case.").

the Pleadings in April 2019, Plaintiff's counsel knew that Plaintiff's claim was subject to a statute of limitations defense. No evidentiary support ever materialized for any of Plaintiff's proffered theories, but party discovery against Shahar continued, as did the corresponding fees to defend her interests.

Indeed, Plaintiff did not sue the seven other individuals she accused of wrongdoing. She did not sue the City Attorney who terminated her employment or the prior City Attorney who, with the Human Resources Commissioner, decided Plaintiff must undergo a fitness for duty exam. That same Commissioner communicated the decision to Plaintiff and later signed her termination paperwork. Nor did she sue the two individuals she accused of stalking and sexual assault. Plaintiff only individually sued Shahar, and Plaintiff and her counsel subsequently point blank refused to dismiss her even when the evidence revealed its fruitlessness. Thus, as an alternative to Rule 11 sanctions, Shahar requests the same monetary sanctions set forth above pursuant to Section 1927.

## V.    **CONCLUSION**

Plaintiff and her counsel's continued refusal to acknowledge that her claim was time-barred and unnecessarily prolong litigation warrants sanctions. Their blatant refusal to recognize this claim was precluded by the facts and law is the type of behavior that merits monetary sanctions to prevent them from similar future behavior.

Respectfully submitted this 13th day of April, 2022.

> BAKER DONELSON BEARMAN
> CALDWELL & BERKOWITZ, PC
>
> /s/ Suzanne T. Lewis
> David E. Gevertz, GA Bar No. 292430
> Hannah E. Jarrells, GA Bar No. 784478
> Suzanne T. Lewis, GA Bar No. 166693
> 3414 Peachtree Road, NE, Ste 1500
> Atlanta, GA 30326
> Telephone: 404-221-6512
> Facsimile: 678-406-8816
> Email: dgevertz@bakerdonelson.com
>       hjarrells@bakerdonelson.com
>       slewis@bakerdonelson.com
>
> *Attorneys for Defendant Robin Shahar*

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1(C) and 7.1(D).

Respectfully submitted this 13th day of April, 2022.

/s/ Suzanne T. Lewis
Suzanne T. Lewis
GA Bar No. 166693

*Attorney for Defendant Robin Shahar*

## **CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing was served upon the

following counsel of record via the Court's electronic filing system:

Cheryl B. Legare, Esq.
Missy Torgerson, Esq.
Legare, Attwood and Wolfe, LLC
125 Clairemont Avenue, Suite 380
Decatur, GA 30030
cblegare@law-llc.com

Lisa C. Lambert, Esq.
Law Office of Lisa C. Lambert
245 N. Highland Avenue
Ste 230-139
Atlanta, GA 30307
lisa@civil-rights.attorney

Jamala S. McFadden, Esq.
Halima H. White, Esq.
The Employment Law Solution
McFadden Davis, LLC
3100 Cumberland Blvd., Ste 1480
Atlanta, GA 30339
jmcfadden@theemploymentlawsolution.com
hwhite@theemploymentlawsolution.com

Respectfully submitted this 13th day of April, 2022.


/s/ Suzanne T. Lewis
Suzanne T. Lewis
GA Bar No. 166693

*Attorney for Defendant Robin Shahar*